**UNITED STATES of America,**
**Plaintiff,**

v.

**Joseph A. LOMBARDO et al.,**
**Defendants.**

**No. CR. 1970–203.**

United States District Court,
W. D. New York.

June 28, 1974.

John T. Elfvin, U. S. Atty., Buffalo, N. Y. (Dennis P. O'Keefe, Dept. of Justice, Atty., of counsel), for the Government.

Charles J. McDonough, Buffalo, N. Y., for defendants Lombardo & Stasio.

Harold J. Boreanaz, Buffalo, N. Y., for defendant Masterana.

CURTIN, Chief Judge.

On February 21, 1974 the attorney for defendants Joseph A. Lombardo and Frank T. Stasio filed a motion seeking a dismissal of the indictment in this case as to all defendants because of the government's failure to comply with the Second Circuit Rules Regarding Prompt Disposition Of Criminal Cases, effective on July 5, 1971.[1] Later the attorney for the defendant Frank Masterana [2] joined in the motion to dismiss.

The indictment in this case, returned on December 30, 1970, charged the defendants with conspiracy and substantive violations of Title 18, United States Code, Sections 1084 and 1952, alleging that interstate facilities were used to promote wagering in violation of law. The trial began before the late Judge John O. Henderson on January 4, 1972 and continued until February 2, 1972. On February 3, 1972 the jury reported a disagreement and Judge Henderson declared a mistrial. The case has not been retried.

In his moving papers Mr. McDonough alleges: "Although more than two years

1. The prompt disposition rules have been superseded in the Western District of New York by the Plan For Achieving Prompt Disposition Of Criminal Cases, effective on April 1, 1973. This plan was promulgated pursuant to Rule 50(b) of the Federal Rules of Criminal Procedure. This case is governed by the old rules.

2. On February 22, 1972 the defendant Masterana was tried in the United States District Court in Macon, Georgia on another indictment and his conviction on that charge was later affirmed. There are a number of other indictments pending against Masterana in other districts.

have elapsed since the mistrial, the Government has neither moved the case for retrial, nor requested any adjournment thereof." [3] On February 27, 1974 the government filed an initial response claiming that it was ready to try the case after the mistrial. However, no reason was given for the delay. The response stated: "Counsel for the Government has had numerous conversations with Mr. Boreanaz and Mr. McDonough over the past two years and can recollect no occasion when either counsel suggested that there should be a trial date." Finding this answer inadequate, the court directed the United States Attorney to file a more detailed response. This was done on April 15, 1974, supplemented later by a letter of April 24, 1974, and finally by an affidavit of Dennis P. O'Keefe, Department of Justice Attorney, on May 30, 1974. The court has considered oral argument as well as letters of attorney McDonough for the defendants, dated April 22 and June 11, 1974.

On February 3, 1972 immediately after the declaration of the mistrial, Robert C. Stewart, the trial attorney for the government, and Mr. Boreanaz, attorney for defendant Masterana, had a conversation with Judge Henderson in his chambers. At that time Mr. Stewart told Judge Henderson and Mr. Boreanaz that he intended to retry the case. However, no formal written notice of readiness for trial was ever filed by the government after the February 1972

mistrial. During October 1972, Judge Henderson called the attorney for the government and ordered the trial to resume the following week. Because Mr. Stewart, the original trial attorney, was engaged in another trial, the case was reassigned to Dennis P. O'Keefe, another Strike Force attorney, who notified Mr. McDonough of the trial setting. However, another case was substituted and the Lombardo case did not proceed. There was no follow-up by the government lawyer of Judge Henderson's call. The government claims that they talked to defense counsel on the telephone from time to time about the setting of a trial date, but no formal effort was made during 1972 or 1973 to bring the case to trial.

After the case was assigned to Mr. O'Keefe, he attempted to secure the testimony of defendant Frank Stasio after granting him immunity. In his response Mr. O'Keefe states that it was his intention to dismiss this indictment as to Stasio and to use his testimony against the other defendants. When Stasio appeared before the grand jury in February 1973, he was not represented by Mr. McDonough, but by a different attorney. After conferences between counsel, his appearance was delayed pending the resolution of the so-called "Will Wilson signature problem" before the Supreme Court. The government argues that before setting the trial date it was anxious to obtain Stasio's testimony.

---

3. In part, the Second Circuit Rules Regarding Prompt Disposition of Criminal Cases provide:

4. In all cases the government must be ready for trial within six months from the date of the arrest, service of summons, detention, or the filing of a complaint or of a formal charge upon which the defendant is to be tried (other than a sealed indictment), whichever is earliest. If the government is not ready for trial within such time, or within the periods as extended by the district court for good cause, then, upon application of the defendant or upon motion of the district court, after opportunity for argument, the charge shall be dismissed.

\* \* \* \* \*

6. If the defendant is to be retried following a mistrial, an order for a new trial, or an appeal or collateral attack, the time shall run from the date when the order occasioning the retrial becomes final.

\* \* \* \* \*

8. A demand by a defendant is not necessary for the purpose of invoking the rights conferred by these rules. However, failure of a defendant to move for discharge prior to plea of guilty or trial shall constitute waiver of such rights. The preceding sentence shall not apply to a defendant without counsel unless he has notice of these rules.

The history reveals that the government was not ready for trial after the February 1972 mistrial. The brief conversation between Judge Henderson and attorneys Boreanaz and Stewart on February 3 was not sufficient notice within the spirit and meaning of the rules, and Judge Henderson's attempt to bring the case to life is not a substitute for government action. The need to obtain Stasio's testimony is not an excuse for delay. In any event, no steps were taken at all after October 1972 to bring the case to trial. The motion of defendants to dismiss the indictment for failure of the government to afford the defendants a speedy trial is granted. United States v. Favaloro, 493 F.2d 623 (2d Cir. 1974).

So ordered.